# Millingar *versus* Sorg *et al.*

1. Payne bought No. 4881 at a tax sale in 1846: within two years, as agent of Benzinger, he bought No. 4884, and located it for Benzinger on 4881. *Held*, that the fact that his title was inchoate did not prevent an estoppel to his asserting title to No. 4881 after his title had become perfect.

2. He had an incipient title running to maturity which could be affected by his conduct.

3. Between innocent purchasers he who causes the injury must suffer.

4. Millingar *v.* Sorg, 5 P. F. Smith 215, affirmed.

March 26th 1869. Before THOMPSON, C. J., AGNEW and SHARSWOOD, JJ. READ and WILLIAMS, JJ., absent.

Error to the Court of Common Pleas of *Elk county:* No. 336, to January Term 1869.

This was an action of ejectment, brought June 12th 1865, by Henry Millingar against F. X. Sorg, Michael Konle, Michael Schoeble, Caspar Werner, Clemens Harberger, Josiah Caldwell, M. A. Mitchell and Francis Van Marsenville. The land claimed in the writ was warrant No. 4881, in Benzinger township, Elk county. The case was before tried, and a verdict rendered for the plaintiff for all the land mentioned in the writ, except about 186 acres set out in the verdict. The judgment was reversed by the Supreme Court at January Term 1868. The report of the case is in 5 P. F. Smith 215, where will be seen a plot of the land in dispute.

On the trial, April 28th 1868, before Williams, Additional Law Judge, the plaintiff showed title in Hiram Payne to warrant

[Millingar *v.* Sorg.]

4881, in the name of W. Willink, the treasurer of Elk county having on the 16th of Frebruary 1867 made a deed to Payne for the land as sold for taxes. On the 16th of August 1849 Payne conveyed to John Morris, and on the 16th of January 1865 Morris conveyed to the plaintiffs.

The defendants gave evidence as follows: Warrant No. 4884, in the name of Willink, to whom a patent issued September 24th 1799. The title to this tract was in Moses McKee on June 29th 1847. McKee at that date appointed Charles H. Thing his attorney in fact to sell all his land in Elk county. On the 19th of August McKee by his attorney sold 711 acres of 4884 to Benzinger and Eschbach. The defendants, Van Marsenville, Harberger, Werner, Schoeble, Caldwell and Mitchell deduce title regularly from Benzinger and Eschbach.

On the 29th of March 1856 part of warrant 4884 was owned by B. E. Mann, who on the 7th of April, by his attorney in fact, conveyed it to Horace Little. On the 9th of June 1856 this part was sold to Little by the county treasurer as 311 acres for the taxes of 1854 and 1855. Little on the 29th of March 1864 conveyed to Konle, and Konle on the 24th of August 1864 conveyed to Sorg.

The defendants examined Hiram Payne, a surveyor, who testified that in 1845 he located Nos. 4885, 4886, 4887 and 4888, for Benzinger; that on behalf of Benzinger he made a contract to purchase McKee's part of warrant No. 4884. Benzinger sent him to New York to make the purchase, and Benzinger purchased from representations made to him by the witness; witness advised him to buy it. He paid the consideration to McKee, and took the deed to Benzinger at Baltimore. The defendants offered to prove by Payne that he represented to Benzinger that the land was within the lines which defendants claim to be the lines of No. 4881. The plaintiffs objected to the offer, the court admitted it, and sealed a bill of exception. Benzinger was at St. Mary's in Elk county, near the land; he and witness were looking over the map together, and the question who owned the land adjoining his was raised; witness had not then been upon No. 4884, and did not know who owned it; all that either of them knew about it was from the maps; this was in 1845; witness did not recollect telling Benzinger where 4884 was located; the four warrants above named, which witness located, adjoined 4884; " I claimed 4881 to be the fourth one from the long warrant; it was the lot north of West creek; that stream run through 4884 as I located it; I so claimed while I owned it; while I owned 4881, there was an improvement commenced in the lot south of it, which I call 4884; was made by the Werners; Werner's house was, at a guess, about 250 rods from the north line of 4884; I supposed him to be on 4884, according to my location of these lands; I owned some land

on the west of the district line, viz., warrant 4882 and east half of 4883; in 1849 I run those tracts; I got William Nelson to assist me, and I had him go with parties desiring to look at the lands, to show where they lay; he could run a line with a compass, and I could trace old lines. A couple of men had been looking at the lot 4884; one was John Morris, he went with Nelson to look at the land, came back, and I closed a sale to him. * * I never run the lines of 4881 for the purpose of locating that warrant, but in locating the other four lots I run, what I called the south line, of 4881; I also run the line between 4884 and 4883." He further testified that a draft, showed him at the trial, represented the warrants as he located them; it shows West creek to be on 4884. He knew the official corners of the lots from drafts furnished him by Benzinger. There was little if any question that Payne located 4884 for Benzinger on his own lot 4881.

William Nelson testified that he was employed in 1849 by Payne to look up the lines and make sales; he took Morris to look at what they then called No. 4881; he pointed out the line of 4881 to Morris; the first warrant they passed after showing Morris the line he called 4884, it had on it an improvement of Werner, and West creek passed through it. He told Morris this tract belonged to Benzinger and Eschbach; knew the land he showed Morris was 4881, from maps shown him by Payne; there was no improvement on the warrant; the Philadelphia and Erie Railroad runs through 4884.

West creek and the railroad both pass through 4881 and not through 4884; Werner's improvement was on 4881.

Charles Luhr testified that he was Morris's agent from 1852, and was employed by him to sell 4881; he described it to witness as north of West creek, and said that he passed through a clearing of Werner's in going to his land. After Millingar had bought the lot from Morris, he asked witness about it; witness said it was the warrant north of West creek; he said that was what Morris had told him; Morris paid taxes on this lot, and went on to it several times after he bought it; there were other improvements than Werner's; one begun in 1848 or earlier.

The evidence will be found much more in detail in the former report of the case.

The plaintiff asked the court to charge:—

1. That no location of warrant No. 4881, made by Hiram Payne prior to the time he acquired his title under the treasurer's sale to him, nor any act done by him, can impair the title in the hands of his grantee John Morris.

2. That no title to land sold at treasurer's sale for taxes is vested in the purchaser until the equity of redemption has expired, which is in two years from the date of the sale.

3. That the improvements of Casper Werner upon warrant

[Millingar *v.* Sorg.]

4881, at the time John Morris bought from Hiram Payne, was not notice to him of any act done by Payne, which put Morris upon inquiry so as to lead to the fact that he was upon it by any act of Hiram Payne.

4. That if a stranger enter upon the land of another, and make improvements by erecting buildings, &c., they become the property of the owner.

5. That the showing John Morris of tract No. 4880 as being No. 4881, the tract he was purchasing, does not prevent him or those claiming under him from claiming No. 4881, where it actually is, if Hiram Payne did not own No. 4880 at the time Morris bought 4881.

6. That Hiram Payne and those claiming under him have been guilty of no acts which estop them from claiming 4881 where its true location is, and shown to be.

7. That under the evidence in the case the plaintiff is entitled to recover.

The court in concluding the charge said:— * *

"[We, therefore, so instruct you and direct you, that if the uncontroverted evidence in the case be believed, the plaintiff cannot recover any portion of the 711 acres held under Benzinger and Eschbach;] as to the balance of the warrant, the defendants set up a tax sale made in June 1856, to Horace Little and trace; Little's title to Konle *et al.*, and have asked us to instruct you that the plaintiff's title was divested by that sale, notwithstanding the regular payment of the taxes on 4881 by plaintiff and his vendors. We refuse so to instruct you. * * The views now expressed cover the points submitted by counsel, as follows: They deny the doctrine of plaintiff's 1st and 2d points. Payne's acts, before he acquired title, might be such as to estop him from asserting a title subsequently acquired, and it is not necessary that the equity of redemption should have expired, in order that his acts given in evidence in this case should bind him by estoppel.

"The 4th point is affirmed, so also is the 5th. If there was nothing but a misdirection of Morris as to the location of the land, the law would be as stated.

"The 3d, 6th and 7th points are denied."

The verdict was for 311 acres, that portion of the land owned by Mann, and sold for taxes to Little.

The plaintiff took a writ of error. He assigned for error the admission of the evidence objected to, the part of the charge enclosed in brackets, and the denial of 1st, 2d, 3d, 6th and 7th points.

*H. Souther*, for plaintiff in error.—The facts were not sufficient to put Morris to an inquiry that would have showed Payne's relation to the land: Hood *v.* Fahnestock, 1 Barr 470; Jacques *v.*

[Millingar v. Sorg.]

Weeks, 7 Watts 271. Possession to be notice to a purchaser must be clear, distinct and unequivocal. Billington v. Welsh, 5 Binney 132; Creeser v. Miller, 2 Watts 275; Sailor v. Hertzog, 4 Whart. 259; Green v. Drinker, 7 W. & S. 440; Martin v. Jackson, 3 Casey 504; 4 Kent's Com. 179; Great Falls Co. v. Woster, 15 N. H. 455; Patton v. Moore, 32 Id. 382; Robinson v. Justice, 2 Penna. R. 19. An admission operates as an estoppel only where it has been acted on: Colton v. Grote, 4 E. D. Smith 296; Morrill v. Taylor, Selden's Notes, No. 2, 47; Farrell v. Higbey, Hill & Den. Rep. 90. The defendants had the means of knowing the location, and they have acted at their peril: Crest v. Jack, 3 Watts 240; Hepburn v. McDowell, 17 S. & R. 383; Millingar v. Sorg, 5 P. F. Smith 224.

*J. G. Hall* and *R. Brown*, for defendants in error.—Payne would have been estopped: Eldred v. Hazlett, 9 Casey 316; Willis v. Swartz, 4 Id. 413; Wendell v. Van Rensselaer, 1 John. Chan. 354; Pickard v. Sears, 6 Ad. & Ellis 475; Freeman v. Cooke, 2 Ex. R. 661; Dezell v. Odell, 3 Hill 219. Morris is estopped, having bought with a knowledge of Werner's improvement: Gratz v. Beates, 9 Wright 496. All claiming under the same deed are estopped: Shaw v. Galbraith, 7 Barr 111; Carver v. Jackson, 4 Peters 1; Trevivan v. Lawrance, 1 Salk. 276. Anything to put a party on inquiry is notice: Epley v. Witherow, 7 Watts 167; Robinson v. Justice; Jacques v. Watts, *supra;* Hemphill v. Carpenter, 6 Watts 25.

The opinion of the court was delivered, May 11th 1869, by

AGNEW, J.—The argument of the learned counsel for the plaintiff in error has not convinced us that the doctrine of estoppel was misapplied to the facts of this case when it was here before: see 5 P. F. Smith. A new point is made, that in 1847 Hiram Payne's title to tract 4881 was inchoate when, as the agent of Messrs. Benzinger and Eschbach, he purchased tract 4884 of Moses McKee. It is true as between Payne the purchaser at Freeman's sale and the former owner, he could not enter or assert title to No. 4881 until the year 1848, when the time of redemption had expired; but Payne held an incipient title running to maturity, which he could affect by his positive acts. He stood in no better position than one who sells land to which he has no title, or a defective title, and afterwards acquires a good title, and who is estopped from recovering from his own vendee. Payne's conduct, on which the estoppel rests, runs throughout the period of his imperfect title, into a time when it had become absolute. It consisted not alone in his purchase of the McKee tract for Benzinger and Eschbach, and locating it on 4881, his own tract, but in the continued delusion he produced, by claiming and selling the adjoining tract 4880

[Millingar *v.* Sorg.]

as 4881 without giving notice to Benzinger and Eschbach of the mistake. He suffered them for years to rest in confident security, and in the mistaken belief that tract 4881 was their own tract 4884, and on the faith of the belief thus induced by his own acts, to sell and convey 4881 as 4884 to various persons, entangling themselves in covenants for title, and leading their innocent vendees to expend labor and large sums of money in extensive improvements. Perhaps a different question might have been presented had Payne discovered his mistake, and as soon as his own title to 4881 became absolute, given notice of it to Benzinger and Eshbach.

Nor do we think the argument as to the limited possession of Werner, and the character of the notice it gave Morris when he bought of Payne, entitled to much weight. The case of Morris does not stand on notice alone. Had he claimed 4881 after he bought, according to its true location, and thus given notice to Benzinger and Eschbach that he challenged their title to it, the question of notice would have assumed a graver aspect. But Morris himself did positive acts, which, added to his non-claim, tended to mislead and lull into security Benzinger and Eshbach, and their vendees. He bought and claimed 4880 as the true location of Payne's tract 4881, paid taxes for it, and exercised over it the acts of an adjoining owner. From August 1849 until January 1865, a period of nearly sixteen years, he kept up the delusion begun by Payne, suffering the adjoining tract 4881 to be improved within his view, and its claimants to become involved in sales and expenditures of labor and money upon it. It was this quiet attitude, accompanied by no note of alarm, yet so effectively operating upon the minds and belief of those owning and occupying the adjoining tract, which in the former opinion was characterized as an operative quietude. Yet surely no lull before the storm could carry with it more effective injury to those upon whom the tempest is soon to break. After a quietude of sixteen years, Morris, or the plaintiff his assignee, suddenly springs into a knowledge that he has been sleeping all this time, and now stands upon a question of notice. But the question rebounds upon himself. Why did he not give notice of his own claim? Why has he suffered his next-door neighbors to rest in this delusive calm? If he answer that he was asleep—unconscious of his rights, the reply must be that his neighbors were equally ignorant and innocent. Payne first and Morris next, and, in privity with him, misled them. Between innocent persons, he who is the cause of the injury must suffer its consequences. On the general question of estoppel we forbear further discussion, having said all we need to say in the former opinion.

So far we discover no error, the court below having stated the principles applicable to the case fairly and fully. But we regret,

[Millingar *v.* Sorg.]

in a case so well tried by the learned judge, to say that an error, perhaps of inadvertence, and yet not the less injurious, was made in submitting the case to the jury.

The 2d assignment of error brings to our attention the following portion of the charge, found at its conclusion, and which is the final and binding instruction to the jury on the question of estoppel. The judge says:—

"We therefore so instruct you and direct you, that if the uncontroverted evidence in the case be believed, the plaintiff cannot recover any portion of the seven hundred and eleven acres held under Benzinger and Eschbach."

This was a binding instruction, and its effect was to take the facts from the jury by assuming that the uncontroverted evidence established the fact that Payne had misled Benzinger and Eschbach, by locating their purchase on his own tract, and inducing them to buy 4881 under McKee's title to 4884. On the former trial of the cause, this fact was plainly and distinctly admitted by Payne, who was the principal witness. But on the second trial he made no such distinct admission, but states, on the contrary, facts tending to show that Benzinger misled himself by his own maps produced to Payne. Payne even states he had not then been upon 4884; that all either of them (he and Benzinger) knew about it was from the maps, and declares also that he had no recollection of telling Benzinger where this lot was located. Upon a careful reading of Payne's testimony on the last trial, it is evident he is tinctured with non-committalism, which led probably to the remark during the argument, that his memory was bad. Now, while it is possible, perhaps probable, the jury might have arrived at the same conclusion on all the evidence, which was reached in the first trial, it is very clear that under the positive direction of the concluding instruction assigned for error, the plaintiff had not the full benefit of the question of fact whether Payne had misled Benzinger as to the location of tract 4884, or Benzinger had deceived himself. This was the key to the whole case, yet the instruction was clearly a binding direction to the jury that upon the evidence the estoppel was made out. For this error the judgment must be reversed, and a *venire facias de novo* awarded.